AO 91 (Rev. 11/11) Criminal Complaint     AUSA Sheri Wong (312) 697-4069

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DANIEL CHAVEZ,<br>SERAFIN VAZQUEZ,<br>ERIC LOPEZ, and<br>ALFONSO VARGAS. | CASE NUMBER:<br><br>**FILED**<br>AUG 19 2016<br>THOMAS G. BRUTON<br>CLERK, U.S. DISTRICT COURT<br><br>**16 CR 534**<br><br>MAGISTRATE JUDGE VALDEZ |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about August 19, 2016, in the Northern District of Illinois, Eastern Division, the defendants violated:

*Code Section*

Title 21, United States Code, Section 841(a)(1)

*Offense Description*

DANIEL CHAVEZ, SERAFIN VAZQUEZ, ERIC LOPEZ, and ALFONSO VARGAS defendants herein, did knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

This criminal complaint is based upon these facts:

  X   Continued on the attached sheet.

_____
JAMES J. LEE
Special Agent, Drug Enforcement Administration (DEA)

Sworn to before me and signed in my presence.

Date: August 19, 2016                        _____
                                                                              *Judge's signature*

City and State: Chicago, Illinois            Maria Valdez, U.S. Magistrate Judge
                                                                              *Printed name and Title*

| | |
|---|---|
| UNITED STATES DISTRICT COURT | |
| | Ss |
| NORTHERN DISTRICT OF ILLINOIS | |

## **AFFIDAVIT**

I, JAMES LEE, being duly sworn, states as follows:

1. I am a Special Agent with the Drug Enforcement Administration ("DEA"), and have been so employed since approximately February 2012. My current responsibilities include the investigation of narcotics trafficking offenses.

2. This affidavit is submitted in support of a criminal complaint alleging that have violated Title 21, United States Code, Section 841(a). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging DANIEL CHAVEZ, SERAFIN VAZQUEZ, ERIC LOPEZ, and ALFONSO VARGAS with possession of a controlled substance with intent to distribute, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendants committed the offense alleged in the complaint.

3. This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents, conversations I have had with others who have knowledge of the events and circumstances described herein, information provided to me by a Confidential Source ("CS-1"), and my experience and training as a Special Agent with the DEA.

1

4. As part of my duties as a DEA Special Agent, I investigate criminal violations relating to narcotics trafficking offenses, including criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 18, United States Code, Sections 1956, and 1957, and Title 21, United States Code, Sections 841, 843, 846, 848, 952, and 963. I have been involved with various electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage and importation of controlled substances.

5. I have received training in the area of narcotics investigations, money laundering, financial investigations and various methods which drug dealers use in an effort to conceal and launder the proceeds of their illicit drug trafficking enterprises. I have participated in numerous investigations involving violations of narcotics laws.

6. This affidavit is made for the purpose of establishing probable cause in support of a criminal complaint charging DANIEL CHAVEZ, SERAFIN VAZQUEZ, ERIC LOPEZ, and ALFONSO VARGAS with knowingly and intentionally possessing with the intent to distribute a controlled substance, namely 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a).

## FACTS SUPPORTING PROBABLE CAUSE

*First August 19, 2016 Buy/Bust Operation*

7. On or about August 19, 2016, the DEA, by utilizing a Confidential Source ("CS-1"), planned a purchase of 1 kilogram of cocaine from DANIEL CHAVEZ for $32,500. CS-1 was arrested by the DEA in mid-2016 on a narcotics charge. CS-1 subsequently agreed to cooperate with the DEA. CS-1 is cooperating with law enforcement in the hope that CS-1's cooperation will be considered by the government in its sentencing recommendation that will be made in connection with CS-1's case. CS-1 has not received any payments in exchange for cooperation with the DEA. Information provided by CS-1 has been corroborated and has resulted in approximately one arrest. As set forth herein, some of the information provided by CS-1 has been independently corroborated by physical surveillance and consensual recordings.

8. Approximately a week before the August 19, 2016 transaction, CS-1 began exchanging text messages with CHAVEZ regarding the purchase of cocaine. CS-1 had on a handful of occasions previously conducted four-ounce cocaine transactions with CHAVEZ. CS-1 relayed to DEA agents the details of those text messages.[1] On August 18, 2016, CS-1 told DEA agents that CHAVEZ told CS-1 that CHAVEZ could obtain a kilogram of cocaine for CS-1 for $32,500. CHAVEZ told CS-

---

[1] These text messages were written in Spanish, and the DEA has not yet had the opportunity to translate them.

1 that his Source of Supply ("SOS") would be delivering the kilogram of cocaine to 3434 Elmwood, Chicago, Illinois.

9. On August 19, 2016 at approximately 7:30 a.m., agents met with CS-1 at a pre-determined meeting location. DEA agents searched CS-1 and CS-1's vehicle for contraband with negative results. DEA then equipped CS-1 with an audio and video recording device and a transmitter. Law enforcement followed CS-1 from the pre-determined meeting location to 3434 Elmwood where another team had already set up surveillance.

10. At approximately 8:00 a.m., agents left the pre-determined meeting location followed by CS-1 en route to the Sky View Restaurant located at 6334 W. Ogden Ave. Berwyn, Illinois 60402. Once at the restaurant, CS-1 placed a recorded call to CHAVEZ to inform CHAVEZ that CS-1 was at the restaurant waiting for CHAVEZ.[2] CHAVEZ told CS-1 that his SOS was not there yet but would be at the Elmwood location shortly. CHAVEZ further told to CS-1 to remain patient.

11. At approximately 9:15 a.m., surveillance observed Eric LOPEZ arrive at the Elmwood location in his vehicle. Surveillance agents then observed Serafin VAZQUEZ enter the passenger's seat of LOPEZ's vehicle and LOPEZ drive his vehicle down the block to a nearby parking lot. At this point, surveillance agents observed

---

[2] Unless otherwise noted, the recorded conversations were all in the Spanish language. Some of the consensually-recorded conversations have been summarized in this affidavit. The summaries do not include all statements made or topics covered during the recorded conversation. Unless otherwise noted, a Spanish-speaking agent was present during the conversation and translated the conversation to other agents who were present.

VAZQUEZ exit the passenger's seat of LOPEZ's vehicle and walk back towards the Elmwood location. At the same time, surveillance agents observed LOPEZ drive his vehicle around the block and park his vehicle at the corner of Ridgeland Ave. and W. Ogden Ave. Surveillance agents observed VAZQUEZ enter the passenger's seat of CHAVEZ's vehicle, CHAVEZ enter the driver's seat of the vehicle, and both depart the area in CHAVEZ's vehicle. Mobile surveillance was then initiated on the vehicle.

12. At approximately 9:21 a.m., CS-1 received a telephone call from CHAVEZ, which was recorded over the audio and video recording device located on CS-1. CHAVEZ stated to CS-1 that he and VAZQUEZ were on their way to the restaurant to meet with CS-1. Surveillance agents followed CHAVEZ to the restaurant when they observed CHAVEZ park next to CS-1 in the parking lot of the Sky View Restaurant. Surveillance agents then observed CS-1 exit CS-1's vehicle and enter the rear driver's seat of CHAVEZ's vehicle. Approximately one minute later CS-1 called me. I was acting as CS-1's customer. CS-1 informed me, acting as the customer, that the cocaine was ready and to bring the money. At this point, agents arrested both CHAVEZ and VAZQUEZ. Both CHAVEZ and VAZQUEZ were placed into custody. Agents also approached LOPEZ who was sitting around the corner to conduct an investigative interview of him. When speaking with LOPEZ, they observed an empty holster located on LOPEZ's right hip. When asked about the holster, LOPEZ stated that he did not have a firearm.

13. Law enforcement recovered 1,050 grams of suspect cocaine. This substance field-tested positive for cocaine. CHAVEZ, VAZQUEZ and LOPEZ were taken to the Berwyn Police Department for processing and interviewing. LOPEZ agreed to be interviewed.

### Interview of Eric LOPEZ

14. On August 9, 2016, at approximately 10:00 a.m., agents interviewed Eric LOPEZ regarding the events leading up to his arrest earlier that day. This interview was conducted in English. LOPEZ was advised of his *Miranda* rights. He waived those rights orally and in writing and agreed to speak with agents. This interview was not recorded. LOPEZ said that he obtained the one kilogram of cocaine from Alfonzo VARGAS (also known as "Primo") earlier that morning in the area of Pulaski Road and 50th Street in Chicago, Illinois. LOPEZ then stated that he drove over to 3434 Elmwood Ave. Berwyn, Illinois to drop off the kilogram of cocaine to "Fin" (later identified as Serafin VAZQUEZ). Once LOPEZ arrived at 3434 Elmwood Ave, LOPEZ stated that VAZQUEZ entered the passenger's seat of his vehicle and that they drove to the end of the block where LOPEZ then gave VAZQUEZ the kilogram of cocaine. LOPEZ then stated that VAZQUEZ exited his vehicle and walked back towards 3434 Elmwood Ave. At this point, LOPEZ stated that he drove around the corner, parked his vehicle, and waited for VAZQUEZ to return with the $32,000 for the kilogram of cocaine. LOPEZ stated that he had to bring VARGAS $32,000 for the kilogram of cocaine later that morning. LOPEZ then stated that he was then

approached by agents and taken into custody. Agents then asked LOPEZ why he had an empty holster and where the firearm was located. LOPEZ stated that the firearm was located inside of his vehicle, inside a "compartment." Agents then asked how to open the compartment, and LOPEZ stated that it had to be opened with a magnet. LOPEZ was then taken outside the police station where he proceeded to open the trap for agents. Inside of the trap, agents located a loaded Sig Sauer 9mm handgun and a plastic bag of suspected cocaine. The suspected cocaine field-tested positive for cocaine and weighed approximately 75 grams. Agents then asked LOPEZ if he was willing to order another kilogram of cocaine from VARGAS and have VARGAS deliver the kilogram of cocaine to LOPEZ. LOPEZ agreed to make a recorded telephone call to VARGAS and order another kilogram of cocaine to be picked up later that morning.

15. At approximately 10:15 a.m., LOPEZ placed a recorded call to VARGAS and stated to VARGAS to bring LOPEZ another kilogram of cocaine. VARGAS stated that he could bring another kilogram of cocaine, but that he needed the money for the first kilogram of cocaine. LOPEZ told VARGAS that he had $65,000 for the first kilogram of cocaine and an additional kilogram of cocaine. LOPEZ told VARGAS to meet him at the same location where they met earlier this morning, which was at the corner of 54th Street and Harding Avenue in Chicago, Illinois.

16. Agents arrived in the area of 54th Street and Harding Avenue, LOPEZ placed another recorded call to VARGAS. This call was in Spanish. A Spanish-speaking agent was present during this phone call who translated the conversation.

7

In summary, VARGAS told LOPEZ that he could not supply LOPEZ with an additional kilogram of cocaine until LOPEZ paid for the first kilogram. LOPEZ stated to VARGAS that he will just pay VARGAS for the first kilogram of cocaine. VARGAS agreed and stated to LOPEZ he will be in the area shortly. LOPEZ told agents that VARGAS was driving a red Chevy Trailblazer with gold rims. Surveillance agents observed VARGAS driving eastbound on 55th Avenue and then northbound on Harding Ave. At this point, agents conducted an investigative stop on VARGAS and placed VARGAS into custody.

17. On scene, agents advised VARGAS of his *Miranda* rights. He waived those rights orally and agreed to speak with agents. This interview was not recorded. VARGAS told agents that he was instructed by a third party to meet with LOPEZ earlier that morning and deliver to LOPEZ a kilogram of cocaine. VARGAS denied to agents that he delivered the cocaine to LOPEZ. VARGAS further admitted that he was instructed by the same third party to recover the money from LOPEZ. During the interview, VARGAS gave written consent to agents to search his cell phone. On that cell phone, agents recovered text messages, which were in Spanish, between VARGAS and LOPEZ setting up and confirming a meeting earlier that morning. A Spanish-speaking

## **CONCLUSION**

18. Based on the foregoing facts, I respectfully submit that there is probable cause to believe that, on or about August 19, 2016, DANIEL CHAVEZ, SERAFIN VAZQUEZ, ERIC LOPEZ, and ALFONSO VARGAS knowingly and intentionally possessed with intent to distribute a controlled substance, namely 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

FURTHER AFFIANT SAYETH NOT.

_____
JAMES LEE
Special Agent, Drug Enforcement
Administration.

SUBSCRIBED AND SWORN to before me on August 19, 2016.

_____
Maria Valdez
United States Magistrate Judge